**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

JAMES WULGAERT,
JOSEPH JOHN TOPCZEWSKI, and
CHRIS ALLAN TRUMP,

Plaintiffs,

v.

MICHAEL FREDERIK SORENSEN,

Defendant.

Case No. ____________________

**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiffs James Wulgaert, Joseph John Topczewski, and Chris Allan Trump, by counsel, allege as follows:

## INTRODUCTION

1. This action concerns the authorship, ownership, attribution, and proceeds of "Comic Book Stain Removal and Whitening: Supplemental Guide to Comic Book CPR" (the "First Edition" or the "Work"), and of the later editions Defendant Michael Frederik Sorensen published from it, "Comic Book SRW: Second Edition: Stain Removal and Whitening" (the "Second Edition") and "Comic Book SRW: Third Edition: Stain Removal and Whitening" (the "Third Edition").

2. Plaintiffs James Wulgaert ("Wulgaert"), Joseph John Topczewski ("Topczewski"), and Chris Allan Trump ("Trump") and Sorensen collaborated to create the Work during 2021 and made revisions into 2022. Wulgaert authored the Heat Overlay Press origins text and supplied original photographs; Topczewski authored safety, stain-categorization, methods, and cockling text and supplied original photographs; Trump authored the Blue LED chapter text and supplied original photographs. Sorensen circulated written documents before publication allocating authorship of the Work's constituent parts to named individuals, solicited author biographies for publication, granted Plaintiffs author credentials on Amazon, and repeatedly described Plaintiffs as co-authors. All four are named as authors and claimants on U.S. Copyright Registration No. TX 9-510-125. The registration is attached as Exhibit A.

3. In November 2024 Sorensen invited Plaintiffs to revise the Work, and Plaintiffs contributed to that revision. In January 2025 Sorensen removed Plaintiffs from the Facebook group in which the revision work was being conducted and banned them indefinitely. He thereafter published a Second Edition crediting himself alone as "Written By," and later a Third Edition, each carrying forward written text and photographs authored by Plaintiffs while removing authorship information identifying them. He has collected all revenue from all three editions, has made only two payments to contributors, and has refused every request for an accounting.

4. Plaintiffs claim copyright only in original expression, through written text, photographs, and protectable selection and arrangement, together with the authorship-identifying copyright management information conveyed with that expression. Plaintiffs claim no right in any idea, scientific principle, procedure, process, system, or method of operation, including the Heat Overlay Press ("HOP") and Blue LED ("BLED") techniques themselves. 17 U.S.C. § 102(b).

5. The parties' communications did not use authorship labels consistently. Participants variously used "author," "co-author," "cowriter," "contributing writer," "researcher," and "team member," and Sorensen at times referred to the Work as "my book." Plaintiffs do not contend that any informal label, standing alone, determines ownership. They allege that Sorensen's written allocation of chapters, his grant of author credentials, his solicitation of author biographies, his public attribution of specific content to specific Plaintiffs, his statements concerning compensation, and his integration of Plaintiffs' material into the published Work establish the parties' objective intent to merge their contributions into a unitary whole. Each Plaintiff's contribution was independently copyrightable.

6. The record contains competing accounts of priority in certain technical developments. A person who is not a party to this action has asserted that he experimented earlier with visible light and peroxide. Trump's claim in this action does not depend on resolving that assertion. Trump asserts ownership of the written expression of a documented, peroxide-free blue-light protocol that he drafted and transmitted in December 2021. He does not allege that he was the first person to use visible light with peroxide, and Plaintiffs do not ask the Court to adjudicate inventorship of any method.

7. Plaintiffs seek: (a) a declaration of joint authorship and co-ownership of the Work or, in the alternative, of each Plaintiff's ownership of his discrete contributions; (b) an accounting and payment of the share of proceeds due from exploitation of jointly owned material; (c) in the alternative, infringement relief for reproduction of separately owned contributions; (d) relief under 17 U.S.C. § 1202(b) for removal of authorship-identifying information from text and photographs; (e) in the further alternative, contract and restitutionary relief arising from Sorensen's promises to compensate contributors; and (f) on behalf of Plaintiff Topczewski alone,

relief under 17 U.S.C. § 512(f) for a knowing material misrepresentation in a notification of claimed infringement submitted to YouTube.

8. Plaintiffs do not presently assert a claim under 17 U.S.C. § 1202(a). The removal and alteration of authorship information is pleaded under § 1202(b).

## PARTIES

9. Plaintiff JAMES WULGAERT is an individual residing in Rock Island, Illinois. Registration No. TX 9-510-125 identifies him as an author and a claimant. He drafted original expression describing the Heat Overlay Press process and its origins, and contributed original photographs used in the Work. Wulgaert's earlier work with overlays and presses is alleged as background only; his authorship claim rests on the written expression he drafted and the photographs he created.

10. Plaintiff JOSEPH JOHN TOPCZEWSKI is an individual residing in Zionsville, Indiana. Registration No. TX 9-510-125 identifies him as an author and a claimant. He drafted original expression concerning chemical and hydrogen peroxide safety, stain categorization, the written description of treatment methods, and cockling, and contributed original photographs used in the Work.

11. Plaintiff CHRIS ALLAN TRUMP is an individual residing in Knoxville, Tennessee. Registration No. TX 9-510-125 identifies him as an author and a claimant. He drafted the Work's BLED chapter, transmitted the final version in December 2021, and contributed original photographs used in the Work.

12. Defendant MICHAEL FREDERIK SORENSEN is an individual residing in Bradford, Arkansas. Registration No. TX 9-510-125 identifies him as an author and a claimant. He coordinated and edited the Work, drafted portions of its procedural text, contributed original photographs and the light box design and instructions, and controlled the publication and sales channels. He is the publisher and the seller of each of the three editions. He alone holds the sales and financial records for all three editions.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Counts I through IV and Count VII arise under the Copyright Act, 17 U.S.C. §§ 101 et seq. Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201–2202 concerning an actual controversy within this Court's jurisdiction.

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Counts V and VI, which are pleaded in the alternative and form part of the same case or controversy. To the extent Sorensen concedes co-ownership and Count II is characterized as arising under state law, this Court has supplemental jurisdiction over Count II on the same basis. Plaintiffs are properly joined under Fed. R. Civ. P. 20(a)(1) because their claims arise out of the same series of transactions, the collaborative creation of the Work and Sorensen's publication of the later editions, and present common questions of law and fact.

15. Illinois's long-arm statute authorizes the exercise of personal jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c). This Court has personal jurisdiction over Defendant. Sorensen owns and personally operates an interactive commercial storefront at comicbookcpr.com through which he has offered

the Work and its later editions for sale, and through which he continues to offer the Third Edition, presents Illinois as a shipping destination a purchaser may select, accepts orders and payment from purchasers in this District, issues order confirmations identifying an Illinois delivery address, and ships copies into this District. He has also offered the Work and its later editions for sale through Amazon and Kindle Direct Publishing, through which copies have been distributed to purchasers in this District. Sorensen has thereby purposefully availed himself of the privilege of conducting business here and could reasonably foresee that copies would be sold in this District. See Curry v. Revolution Labs., LLC, 949 F.3d 385, 398-402 (7th Cir. 2020); NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 624-27 (7th Cir. 2022); State of Illinois v. Hemi Grp. LLC, 622 F.3d 754, 757-59 (7th Cir. 2010). Plaintiffs' claims concerning the reproduction, distribution, attribution, and commercial exploitation of the Work and later editions arise out of and relate to those contacts because the copy Sorensen sold and shipped into this District, and any further copies sold as alleged in Paragraph 19, are copies of editions from which Plaintiffs' authorship information was removed and in which their expression was reproduced. See Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1026–28 (2021). Sorensen additionally solicited written contributions and photographs from a contributor residing in Illinois over a period of years, transmitted drafts and proof copies into Illinois, and directed contributor compensation into Illinois on two occasions.

16. That storefront is linked from Sorensen's website at kaptainmyke.com. Order confirmations issued by the storefront identify Sorensen's own electronic mail address, kaptainmyke@gmail.com, and his Bradford, Arkansas address as those of the seller and shipper.

17. On August 5, 2026, before the filing of this action, Sorensen's storefront accepted and confirmed an order for one paperback copy of "Comic Book SRW: Third Edition, Stain Removal

and Whitening," SKU CMC-BK-SRW-TE, at a total price of $51.99, for shipment to a purchaser at an address in Chicago, Illinois, within this District. The storefront presented Illinois as a shipping destination selectable at checkout, and the purchaser selected it. The confirmation was issued by Sorensen's storefront, identifies the Illinois delivery address, and identifies Sorensen as the seller and shipper. Sorensen accepted payment for that order and shipped the copy into this District, as reflected in a United States Postal Service tracking record. The copy was delivered to the Chicago address in this District on August 10, 2026.

18. Sorensen alone possesses the records identifying the number, dates, destinations, and value of sales of the Work and its later editions. Those records are not public. As alleged in Paragraphs 79 and 80 and 82 through 86 below, Plaintiffs requested that information before suit, satisfied the condition on which its disclosure was offered, and received nothing. Plaintiffs therefore have no independent means of identifying individual purchasers in this District.

19. On information and belief, and subject to a reasonable opportunity for further investigation and discovery, Sorensen has made additional sales of the Work and of its later editions to purchasers in this District, through the same storefront and through Amazon and Kindle Direct Publishing. That allegation is based on Sorensen's unrestricted offering of the Work and its later editions for sale to purchasers in this District, at all relevant times, through the storefront and through Amazon and Kindle Direct Publishing. Those sales, and the records evidencing them, are within Sorensen's exclusive possession and control and are among the records sought by the accounting requested below.

20. Venue for the copyright claims is proper under 28 U.S.C. § 1400(a). Sorensen may be found in this District within the meaning of that section because he is subject to personal

jurisdiction here for the reasons alleged in Paragraphs 15 through 19. See Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., 8 F.3d 441, 445–46 (7th Cir. 1993). To the extent applicable to the associated noncopyright claims, venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to those claims occurred in this District, including Sorensen's offer for sale of the Work and its later editions to purchasers here and his sale, distribution, and shipment of a copy of the Third Edition to a purchaser in this District, as alleged in Paragraph 17.

## FACTUAL ALLEGATIONS

### A. Collaborative Development of the Work

21. During 2021, Sorensen and Plaintiffs worked together on a supplemental guide to Sorensen's earlier book, Comic Book CPR, addressing advanced comic book stain removal and whitening.

22. Sorensen circulated an outline, requested write-ups, input, and feedback from identified contributors, assigned and proposed subjects, circulated drafts, requested revisions, and solicited author biographies and photographs for publication.

23. The collaborators conducted testing, exchanged results, reviewed drafts, proposed edits, and discussed the scope and pricing of the publication. In December 2021, Sorensen described the project as a second volume and stated that he required a team of researchers to conduct testing and record results. Plaintiffs allege the testing and research as background describing how the Work was developed. No Plaintiff claims copyright in any test, result, datum, or method.

24. The four collaborated with the mutual intention that their respective contributions be merged into inseparable and interdependent parts of a unitary publication. The Work is therefore a "joint work" within the meaning of 17 U.S.C. § 101.

25. Each collaborator contributed original expression that is independently copyrightable. Topczewski drafted original expository prose on stain categorization, safety, treatment methods, and cockling. Wulgaert drafted prose describing the Heat Overlay Press process and its origins. Trump drafted the Work's Blue LED chapter. Sorensen drafted procedural text and light box instructions. Each also created original photographs published in the Work. Plaintiffs claim copyright only in the original wording, photographs, and protectable selection and arrangement identified in this Complaint and the contribution-and-scope comparison, and not in any underlying idea, procedure, process, system, method, test, result, datum, or technique. See Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1068, 1071–72 (7th Cir. 1994); Janky v. Lake County Convention & Visitors Bureau, 576 F.3d 356, 361–63 (7th Cir. 2009).

26. The Work as first published consists of 226 numbered pages and comprises expository text, step-by-step instructional writing, safety guidance, chapter narratives, tables, and photographs.

**B. The Collaborators Allocated Authorship in Writing Before Publication**

27. Between December 11 and December 23, 2021 — weeks before publication — Sorensen circulated to the collaborators a series of written documents assigning the Work's constituent parts to individual collaborators by name. Those documents distinguished among assigning a subject, supplying research or testing, drafting the expression, and receiving authorship credit, as set out below.

28. On December 11, 2021, Sorensen circulated a chapter outline attributing sections to individual collaborators, including "The Science of Effects of Blue Light LED (Chris Trump)," "Building a Light Box (Michael Sorensen)," and "Heat Overlay Press (James Wulgaert)."

29. On December 12, 2021, Sorensen circulated the Work’s HOP chapter under an express attribution block reading, in relevant part: "Procedure written by Michael Sorensen. Research, findings, studies, trials and data provided by Michael Sorensen, James Wulgaert and Chris Trump." Plaintiffs do not claim copyright in the research, findings, studies, trials, or data referenced in that attribution block. Wulgaert’s authorship claim as to Heat Overlay Press material rests on the origins text he drafted, not on the procedure text that block attributes to Sorensen.

30. On December 18, 2021, Sorensen circulated a draft of the Work’s Chapter 7, "Types of Stains," under the caption "CATEGORIZING THE COMPLEXITIES OF STAINS (by Joseph J. Topczewski, Ph.D.)." The chapter as circulated consisted of several hundred words of original expository prose drafted by Topczewski.

31. On December 23, 2021, Sorensen circulated a revised outline with further individual attributions, including "The Science of Effects of Blue Light LED (Chris Trump)," "Damages (Joe Topczewski backer board photos)," "Building a Light Box (Michael Sorensen)," and "BLED and Overlay (Chris Trump and James Wulgaert)."

32. On December 14, 2021, Sorensen requested that each collaborator supply "a small paragraph consisting of 3 to 5 sentences briefly describing yourself for the author bio page," and thereafter assembled an author bio page identifying the collaborators.

33. Trump transmitted the final version of the BLED chapter on December 24, 2021. Sorensen praised that write-up and publicly attributed the documented BLED content to Trump, the HOP concept to Wulgaert, and the light box design to himself. On January 18, 2022, Sorensen published a video on his own YouTube channel titled "S2 E10 Comic Book Stain Removal and Whitening by KaptainMyke," under a description reading: "HOP Method developed by James Wulgaert, BLED Method created by Chris Trump, and BLED Light Box designed by Michael Frederik Sorensen." Plaintiffs plead that statement as Sorensen's contemporaneous public attribution of the Work's documented content to named collaborators, and not as an assertion concerning the origin of any method.

34. The First Edition includes material appearing at or about pages 1, 31–32, 86, and 132–133 that Plaintiffs allege derives from Topczewski's drafts, including the Chapter 7 draft Sorensen circulated on December 18, 2021; the Heat Overlay Press origins material appearing at or about page 88 that Plaintiffs allege derives from Wulgaert's draft; and a BLED chapter beginning at or about page 147 that Plaintiffs allege derives from the draft Trump transmitted on December 24, 2021.

35. Plaintiffs allege these contributions without asserting that any Plaintiff exclusively owned any underlying method. The development record reflects both distinct authorial contributions and collaborative testing.

36. Throughout the drafting period, Plaintiffs exercised editorial authority over the Work. Sorensen circulated proof copies for review and instructed recipients not to sell, copy, or photograph them. He stated that he would publish only if there were no objection warranting a

"pull the plug" moment and acknowledged that publication would be held if "one of us does not agree with the procedure i wrote in place per chapter."

**C. Publication**

37. On January 16, 2022, Sorensen submitted the Work to Amazon for publication, stating to the collaborators that he had "clicked 'Publish'. It's done."

38. On January 17, 2022, Sorensen reported to the collaborators that the Work "is live now at my website and on amazon since amazon decided to make it ready right away instead of waiting 72 hours like usual. James' name is not on one edition via app but his name is on both listings for ebook and paperback."

39. The Work was and is offered for sale through Amazon, Kindle, and Shopify listings controlled by Sorensen. The Amazon listing for the First Edition bears ASIN B09QJXBJ3X, reflects a publication date of January 1, 2022 as shown on the platform listing, and identifies the Work as "Comic Book Stain Removal and Whitening: Supplemental Guide to Comic Book CPR." That listing identifies the authors of record as "Michael Frederik Sorensen (Author), Chris Trump (Author), Joseph Topczewski Phd. (Author), James Wulgaert (Author)." Sorensen controlled the author fields in each of those listings. Plaintiffs do not allege that Amazon or any other platform determined who was identified as an author.

40. The distinction among completion of a draft, creation of proofs, upload to the platform, first sale, and later revision is material to this action. Plaintiffs rely on platform and publication records, and not on shorthand descriptions in correspondence, to establish each date.

**D. The Credits: Promised, Granted, Relied Upon, and Withdrawn**

41. Sorensen promised the collaborators authorship credit before the Work was written. On December 14, 2021 he wrote to Wulgaert: "trust me when is say you are getting full credit for the HOP Method." The same day he wrote to the group: "You guys deserve full credit for this because I was about ready to give up on stain removal."

42. Sorensen then granted that credit in two tiers of his own design. On January 1, 2022 he wrote that he was "giving chris, james, joe author credentials on amazon" so that their names would appear on the Work's Amazon title page, and that "[t]he rest of you will be on book first page title credits."

43. Sorensen treated those credits as carrying legal significance. He referred to Wulgaert as "a cowriter of the book" on July 16, 2022. On September 25, 2022 he told the collaborators that, if asked to give credit, they could state that they were on his team and a co-author of the Work, and that he would vouch for them. On June 20, 2022 he wrote to a collaborator: "You as a co-author of that book have every right to cease and desist."

44. Sorensen also invoked the Work's credits and title page when asserting rights against third parties, directing others to read the title page and the copyright paragraph printed beneath it.

45. On September 24, 2022, Sorensen wrote that the collaborators were "a part of comic book cpr which created and invented the techniques," describing the Work's content as the product of collective effort. Plaintiffs plead that statement as evidence of Sorensen's contemporaneous view of the project as a collective effort, and not as a claim by any Plaintiff to ownership of any technique.

46. On April 28, 2023, Sorensen wrote: "I have always let my co-authors use that code." On September 30, 2023, he referred to "the other co-authors" of the Work.

47. On October 1, 2022, Sorensen defined the two tiers expressly for the next volume, stating that there would be "a ‘Book 3’ group chat for co-writers" and that "[t]esters and photographers will be in a second group chat … as contributors." Sorensen therefore drew, and understood, the distinction between a co-writer and a contributor.

48. When Sorensen published the Second Edition in 2025, he applied the lower of his own two tiers to Plaintiffs. He credited himself alone as "Written By," credited Topczewski, Wulgaert, and Trump nowhere as writers, and listed them instead in back matter under the designations "Research and Development" and "Additional Photos." Those designations correspond to the "[t]esters and photographers" whom Sorensen had defined as contributors rather than co-writers. He did so notwithstanding that he had granted each of them author credentials in 2022 and had described each of them as a co-author thereafter.

49. Sorensen also at times referred to the Work as "my book," and the First Edition carried a copyright notice identifying Sorensen alone. Plaintiffs do not contend that either fact resolves authorship. Sorensen’s written allocation of chapters, his grant of author credentials, his solicitation of author biographies, his public attribution of specific content to specific Plaintiffs, and his statements concerning compensation demonstrate the parties’ objective intent more completely than isolated shorthand references or a notice he alone drafted.

50. No communication reviewed by Plaintiffs contains a written assignment by any Plaintiff transferring copyright ownership in his contributions to Sorensen, and no writing satisfying 17 U.S.C. § 204(a) has been identified. No communication establishes that any Plaintiff’s contribution was a work made for hire, and Registration No. TX 9-510-125 states that the Work was not made for hire. No Plaintiff granted Sorensen a license, express or implied, to publish his

contribution in an edition identifying Sorensen as sole author or with his authorship credit removed, and no communication reviewed by Plaintiffs contains any grant of such permission.

**E. Registration History**

51. U.S. Copyright Registration No. TX 9-510-125 has an effective date of registration of May 22, 2025 and a registration decision date of June 16, 2025. It identifies Sorensen, Trump, Wulgaert, and Topczewski as authors and as claimants, identifies each author's contribution as "text, photograph(s)," states "Work made for hire: No," and excludes "preexisting photographs" from the claim.

52. The certificate is prima facie evidence of the validity of the copyright and of the facts stated in it to the extent provided by 17 U.S.C. § 410(c), subject to rebuttal and to the actual scope of the application, deposit material, exclusions, and Copyright Office correspondence.

53. The certificate recites a date of first publication of January 1, 2022. If that date differs from the publication sequence alleged in Paragraphs 37 and 38, any such inaccuracy was inadvertent and was not included on the application with knowledge that it was inaccurate. See 17 U.S.C. § 411(b)(1)(A); Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 142 S. Ct. 941, 946–48 (2022). Registration occurred within five years of first publication under either alleged date, and the certificate therefore constitutes prima facie evidence as provided in 17 U.S.C. § 410(c).

54. After receiving Plaintiffs' September 19, 2025 demand, Sorensen sought or obtained U.S. Copyright Registration Nos. TX 9-546-958 and TX 9-566-200, each effective October 2, 2025 and each identifying Sorensen as sole author and sole claimant. Registration No. TX 9-546-958 bears a registration decision date of December 15, 2025; it excludes from its claim "some text, photographs, and artwork" and claims as new material "text, photograph(s), artwork."

Registration No. TX 9-566-200 is a registration of "Comic Book SRW: Second Edition: Stain Removal and Whitening," bears a registration decision date of February 18, 2026, recites a date of first publication of May 21, 2025, excludes from its claim "text, photographs, and artwork created by other sources," and claims as new material "text, photographs, compilation of text and photographs." Registration No. TX 9-546-958 is not, however, a registration of later material or of a later edition. It bears the same title as the First Edition, "Comic Book Stain Removal and Whitening: Supplemental Guide to Comic Book CPR," and recites the same date of first publication, January 1, 2022, as Registration No. TX 9-510-125. Thirteen days after receiving Plaintiffs' demand, Sorensen thus applied to register as his sole work the very work already registered to four named authors. The registrations are attached as Exhibits B and C.

55. Registration No. TX 9-566-200 acknowledges on its face "text, photographs, and artwork created by other sources" while claiming sole authorship in Sorensen. Plaintiffs plead that exclusion as an acknowledgment that the registered material included matter created by others, and not as an admission of co-authorship or as a concession concerning the scope of any Plaintiff's contribution.

56. The competing registrations create a live controversy concerning authorship and ownership. Plaintiffs do not allege that the later certificates establish sole authorship, nor that the earlier certificate conclusively resolves every contribution without reference to the registration files and the evidence.

57. If a material inaccuracy in any registration is placed in issue and the requirements of 17 U.S.C. § 411(b) are satisfied, Plaintiffs request the referral procedure that section prescribes.

Plaintiffs do not plead § 411(b) as a freestanding claim for damages and do not allege that a registration is cancelled by a judicial finding alone.

**F. The 2024 Collaborative Revision and Sorensen's Removal of Plaintiffs**

58. In November 2024, Sorensen proposed to the collaborators that the Work be revised and invited their input. On November 23, 2024 he asked the group, "is there anything you guys would change from the second book," and proposed that the revision be called the "second edition."

59. Sorensen stated that the revision would proceed collaboratively, and that "original writers from the first book will be contributing to the second book."

60. Plaintiffs accepted that invitation and contributed. On November 23, 2024, Trump responded that he had already prepared written notes identifying areas requiring revision and proposed specific edits. On December 13, 2024, Wulgaert proposed additional revision content. In or about December 2024, Sorensen messaged Wulgaert directly and solicited his content for the forthcoming second volume. Plaintiffs supplied that content on the terms Sorensen had stated, a collaborative revision to which the original writers of the First Edition would contribute, and on no other basis.

61. On December 14, 2024, Sorensen confirmed to the group that he "will make changes to the second edition of the SRW book."

62. On January 14, 2025, Sorensen removed Topczewski, Wulgaert, and Trump from the Facebook group in which the revision was being conducted and banned them indefinitely.

63. No Plaintiff consented to the publication of a revised edition crediting Sorensen as sole author, demoting Plaintiffs from authors to contributors, removing their authorship information, or assigning all revenue from that edition to Sorensen. Participation in a collaborative revision was not consent to any of those things. No Plaintiff granted Sorensen a license to publish his contribution in such an edition. To the extent any license is found to have arisen, it did not extend to those uses, and Sorensen's removal of Plaintiffs from the group and his indefinite ban ended the collaborative undertaking under which their contributions had been supplied. The expression Plaintiffs allege was carried into the Second and Third Editions is the expression they authored for the First Edition. Plaintiffs separately supplied revision content in 2024 and allege its use in the later editions only to the extent identified in the contribution-and-scope comparison.

**G. The Later Editions and the Identified Use of Plaintiffs' Expression**

64. Sorensen published a later edition on May 21, 2025 (the "Second Edition"), bearing ISBN 979-8282280159, and thereafter, on October 27, 2025, a further edition (the "Third Edition"), offered for sale as "Comic Book SRW: Third Edition, Stain Removal and Whitening" in paperback under SKU CMC-BK-SRW-TE on Sorensen's own storefront and under ISBN-13 979-8270039400 on Amazon. The Amazon listing for the Third Edition identifies Michael Frederik Sorensen as its sole author.

65. The parties' correspondence used "Book 3," "third book," and "third edition" inconsistently. In this Complaint, "Second Edition" and "Third Edition" refer only to the specific publications identified by verified title, identifier, and publication date, and not to any preliminary discussion of a proposed third standalone book.

66. The Second Edition presents Sorensen alone as "Written By" on its cover and in its indicia. It credits Plaintiffs nowhere in its front matter, listing them only at page 265 under the designations "Research and Development" and "Additional Photos." It retains identified text derived from Plaintiffs' contributions while removing or altering the authorship attributions appearing with that text. The First Edition's author bio page, at or about page 217, does not appear in the Second Edition. Neither do the First Edition's individual method credits. The same page separately credits "Principle Photography" to Sorensen alone.

67. The First Edition's BLED chapter, at or about page 147, carried the attribution "Procedure by Chris Trump," and the chapter "The BLED Misting Method," at or about page 154, carried the attribution "by Chris Trump and Michael Sorensen." In the Second Edition, neither the chapter titled "Blue LED Light Photobleaching (BLED)" nor the subsection titled "Blue Light LED (BLED) Method" identifies Trump as an author. The First Edition likewise attributed the HOP Method to Wulgaert by name, at or about page 88, under the heading "Origins of HOP method by James Wulgaert." That attribution does not appear in the later editions in the form in which it appeared in the First Edition.

68. The text of the BLED chapter Trump transmitted on December 24, 2021 appears in substantially corresponding form in all three editions. The Second Edition retains text supplied by Trump, including the frequently-asked-questions section, which is reused in substantially the same form in the Third Edition. In the Second and Third Editions, Sorensen altered the order of "The BLED Misting Method" and "The BLED Overlay Method" chapters relative to the First Edition, and expanded the BLED misting chapter, while retaining Trump's expression.

69. Specifically, the First Edition included a safety page at or about page 1 bearing the signature "Joseph Topczewski, Phd." in connection with safety text authored by Topczewski. The Second Edition retained the safety text in nearly verbatim form while removing that signature. The Third Edition reproduces the same safety content with its wording altered in part, and likewise without Topczewski's signature. The First Edition separately displayed a quoted passage attributed to Topczewski by name at or about page 86.

70. The First Edition also included display pull quotes attributed to Plaintiffs by name, including a pull quote attributed to Wulgaert at or about page 17, a pull quote attributed to Topczewski at or about page 62, pull quotes attributed to Plaintiffs individually at or about page 135, pull quotes attributed to Topczewski and Wulgaert at or about page 161, and pull quotes attributed to Trump, Wulgaert, and Sorensen at or about page 162. The later editions do not reproduce those pull quotes or the attributions appearing with them.

71. The Second Edition removed most of the original photographs contributed by Plaintiffs, together with the credits appearing with them. The Third Edition replaced the remainder with different photographs at the same page and figure numbers, while retaining Sorensen's own photographs in the same positions.

72. Plaintiffs will identify, in a contribution-and-scope chart and page-specific comparisons, the items of asserted copied expression and of removed authorship information on which they rely. For each such item Plaintiffs will identify the First Edition passage or image, its author, the corresponding later-edition passage or image, registration coverage, and any applicable exclusion, together with the source file and creation date where a source file exists. Representative instances are alleged in Paragraphs 66 through 71. Plaintiffs do not undertake to

catalogue every difference among the three editions. General similarity percentages are not pleaded as an independent basis of liability.

73. The Third Edition contains a publisher's statement, appearing at page 10 immediately above Sorensen's signature, reading: "This Comic Book SRW: Third Edition is the same book as the Comic Book SRW: Second Edition. The only difference between the two books is that I removed copyrightable written expressions and photographs for legal reasons." Sorensen published a further statement in the Third Edition's Amazon listing, under the heading "Publisher's Note," reading: "The content of this Third Edition is substantially the same as Comic Book SRW: Second Edition, except that portions of copyrighted text and images have been revised or substituted." The Second Edition and the Third Edition each consist of 266 numbered pages. Removal of copyrightable text and photographs from the Second Edition without substitution would have reduced that count. Notwithstanding Sorensen's statements, the Third Edition retains expression Plaintiffs allege they authored, including the BLED chapter text identified in Paragraph 68. Plaintiffs will establish the particular retained expression through the contribution-and-scope chart and page-specific comparisons.

74. Plaintiffs do not allege infringement merely because Sorensen used the same HOP, BLED, stain removal, or whitening procedures. The infringement alleged concerns original expression fixed in text and photographs.

75. The Second Edition and the Third Edition were and are offered for sale commercially, including through Amazon and through Sorensen's own storefront at comicbookcpr.com. The Third Edition remained available for purchase, was sold for delivery into this District on August

5, 2026, and was delivered to an address in Chicago, Illinois, within this District, on August 10, 2026.

**H. Compensation and the Failure to Account**

76. During and after development, Sorensen used several descriptions for contributor compensation, including a one-time royalty bonus, an annual royalty commission, payment to contributors involved in the new book, a gift, and confidential at-cost purchase and resale privileges. On March 28, 2022 he wrote: "You guys deserve compensation for helping me write the new book." On June 14, 2022 he wrote: "As before I will pay a royalty commission payment for the new book to all of you involved." On July 17, 2022 he wrote: "I’m going to make it my goal to pay everyone a royalty commission in January or February of each year."

77. Those descriptions do not, without more, establish a single fixed royalty percentage or duration applicable to every Plaintiff and every edition. They do establish that the contributions were not intended to be gratuitous and that Sorensen understood contributors would be compensated by reference to their work, to sales, or to both. The terms that are ascertainable from Sorensen’s own writings and conduct are a payment to each contributor measured as 12 percent of monthly gross sales, payable annually, calculated on gross sales without deduction for expenses.

78. A payment form dated March 29, 2022, titled "Royalty Commission Payment," records a payment of $804.84 to each Plaintiff, each such payment described as 12 percent of monthly gross sales for the period January 1 through January 31, 2022. The form identifies the payer as "Michael Frederik Sorensen, owner www.kaptainmyke.com." Sorensen made the payment separately to each Plaintiff by PayPal transfer from the account associated with

kaptainmyke3@gmail.com. Sorensen made a second payment to each Plaintiff on or about December 23, 2022, transmitted by PayPal and described as a Christmas bonus. No release, condition, or full-payment language accompanied either payment.

79. Sorensen controlled the principal publication and sales channels and possesses sales, royalty, and payment information not independently available to Plaintiffs. Plaintiffs have no means of obtaining or verifying that information without an accounting.

80. Plaintiffs requested sales figures, profit information, and an accounting. Sorensen has not provided a complete verified accounting supported by platform reports and source records, and has produced no sales report, platform statement, or other underlying financial record.

81. Plaintiffs seek an accounting covering Amazon and Kindle Direct Publishing, eBay, Shopify, PayPal, Stripe, direct sales, wholesale sales, discounts, returns, and every other channel through which the Work or any later edition was sold.

**I. Pre-Suit Notice**

82. Before filing this action, Plaintiffs gave Sorensen written notice of their authorship, attribution, and accounting disputes and requested sales information and a verified accounting.

83. Sorensen has not provided a complete verified accounting supported by platform reports, sales records, royalty statements, payment records, or other underlying financial documents.

84. Plaintiffs therefore have been unable to determine the full amount of sales, revenues, deductions, profits, and compensation attributable to the Work and later editions without discovery and an accounting.

85. Plaintiffs plead the foregoing facts to establish the existence of an actual controversy, notice of Plaintiffs' claims, and the need for an accounting; they do not rely on any compromise offer or settlement communication to establish liability or damages.

86. Plaintiffs plead the foregoing facts as procedural background only, and not as evidence of liability, willfulness, or the validity or amount of any claim.

**COUNT I**

**Declaratory Judgment — Joint Authorship and Co-Ownership**

(28 U.S.C. § 2201; 17 U.S.C. §§ 101, 201(a); Fed. R. Civ. P. 57)

87. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

88. An actual and justiciable controversy exists concerning whether the Work, as defined in Paragraph 1, is a joint work and whether Plaintiffs are co-authors and co-owners of the copyright in it under 17 U.S.C. §§ 101 and 201(a). Plaintiffs do not seek in this Count a declaration of authorship or ownership of material Sorensen first contributed to the Second Edition or the Third Edition.

89. Each Plaintiff contributed original, independently copyrightable expression intended for inclusion in the Work, as identified in Paragraphs 25 and 34 and in the contribution-and-scope comparison described in Paragraph 72.

90. The contributions were integrated into a single publication. The parties' contemporaneous statements and conduct, including Sorensen's pre-publication promise of "full credit," the December 2021 written allocations of authorship, the grant of Amazon author

credentials, the solicitation of author biographies and their publication in the Work, the contributor-specific chapter assignments, his description of Wulgaert as a "cowriter," and his repeated acknowledgment that the collaborators were co-authors with enforceable rights, establish an objective intent to create a single joint work through the merger of their independently copyrightable contributions into inseparable and interdependent parts of a unitary whole. See Janky v. Lake County Convention & Visitors Bureau, 576 F.3d 356, 361–63 (7th Cir. 2009). As alleged in Paragraph 27, those documents distinguished among assigning a subject, supplying research or testing, drafting the expression, and receiving authorship credit.

91. Sorensen now disputes or materially limits Plaintiffs' authorship and ownership rights and has asserted sole authorship of later editions. That assertion is inconsistent with his invitation to Plaintiffs to revise the Work in November 2024 and with his direct solicitation of contributions in December 2024.

92. Plaintiffs request a declaration identifying the authors and owners of the Work and the nature and extent of each party's interest. If the Court determines that the Work is a joint work authored by Wulgaert, Topczewski, Trump, and Sorensen, each is a co-owner of the copyright in the Work and holds an undivided interest in the Work as a whole.

93. No agreement allocating unequal copyright ownership interests in the Work has been identified. No Plaintiff executed a writing transferring his copyright interest in the Work or in his contribution to Sorensen. Accordingly, absent proof of a valid agreement establishing different ownership interests, Plaintiffs request a declaration that Wulgaert, Topczewski, Trump, and Sorensen each owns a one-quarter undivided interest in the copyright in the Work.

94. The requested declaration concerns copyright ownership only. The parties' respective entitlements to proceeds remain subject to any proven agreement concerning compensation or allocation of profits and to the accounting requested in Count II.

95. In the alternative, if the Work is not held to be a joint work, Plaintiffs request a declaration identifying each Plaintiff's ownership of his separately authored and unassigned text and photographs.

**COUNT II**

**Accounting and Payment of Co-Owner Proceeds**

(17 U.S.C. § 201(a); 28 U.S.C. § 1367(a))

96. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

97. This Count is pleaded on the condition that one or more Plaintiffs is determined to be a co-owner of the Work or of material Sorensen has commercially exploited.

98. A co-owner of a copyright who exploits the jointly owned work for profit must account to the other co-owners for their share of the profits, subject to proof of ownership shares, revenues, and allowable deductions. Although a co-owner's unilateral publication of jointly owned material does not itself constitute copyright infringement, the co-owner remains accountable for profits derived from that use. See Gaiman v. McFarlane, 360 F.3d 644, 652 (7th Cir. 2004). The accounting sought is equitable relief flowing from the co-ownership determination requested in Count I. To the extent the claim is characterized as arising under state law, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a). Absent a proven

agreement governing the division of profits among co-owners, each co-owner's share is measured by his ownership interest.

99. That duty extends to profits derived from the First Edition and, to the extent attributable to the jointly owned Work, to profits derived from any later edition prepared from it. Plaintiffs do not seek profits attributable to material Sorensen first contributed to a later edition.

100. Sorensen controlled publication, the sales channels, the receipts, and the source records for the Work and every later edition.

101. As alleged in Paragraphs 77 and 78, Sorensen made or caused at least two payments to each Plaintiff associated with book sales, the first recorded on a form dated March 29, 2022 and the second made on or about December 23, 2022. He has not provided a complete accounting covering all sales periods and channels, and has made no payment since. Neither payment altered the parties' respective ownership interests in the copyright, and Plaintiffs do not contend that either payment measures the share due on an accounting.

102. Plaintiffs are entitled to an accounting stating gross revenues from all channels, any deductions claimed by Sorensen, the source records supporting each claimed deduction, deductions permitted by law, and resulting net profits; to a determination of the parties' respective shares; and to payment of the amounts proven due, from first publication through the date of judgment.

103. To the extent permitted by the governing law, and upon proof that Sorensen holds identifiable proceeds belonging in part to Plaintiffs, Plaintiffs request imposition of a constructive trust over Plaintiffs' share.

104. Plaintiffs do not seek duplicative recovery under this Count and any award of damages or profits under Counts III, V, or VI based on the same receipts.

## COUNT III

## Copyright Infringement — Unauthorized Reproduction, Distribution, and Derivative Use of Separately Owned Contributions

(Pleaded in the Alternative)

(17 U.S.C. §§ 106, 201, 204, 501)

105. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

106. This Count is pleaded in the alternative, under Federal Rule of Civil Procedure 8(d), to the extent the Court determines that Sorensen is not a co-owner entitled to use the particular expression at issue.

107. Sorensen prepared, published, distributed, and offered for sale the Second Edition and the Third Edition, each a derivative work based upon the Work, without the authorization of any Plaintiff. To the extent either later edition incorporates expression that is not jointly owned, or as to which Sorensen holds no ownership interest or license, Sorensen lacked authority to prepare a derivative work from that expression. See Pickett v. Prince, 207 F.3d 402, 406 (7th Cir. 2000). Plaintiffs do not contend that a co-owner of a joint work is categorically barred from preparing a derivative work of it; a co-owner who does so remains accountable to his co-owners for the profits, as alleged in Count II. See Gaiman v. McFarlane, 360 F.3d 644, 652 (7th Cir. 2004).

108. Separately, if the Court determines that any asserted contribution is not part of a jointly owned work, or that Sorensen holds no co-ownership interest in that discrete contribution, the Plaintiff who authored it owns the copyright in his original, unassigned expression, and Sorensen's reproduction of it is actionable without regard to his interest in the Work as a whole.

109. The asserted expression includes, subject to the contribution-and-scope chart and the registration files: (a) Topczewski's original prose describing safety, stain categorization, treatment methods, and cockling, and his original photographs; (b) Wulgaert's HOP origins text, the attributed pull quote, and his original photographs; and (c) Trump's BLED chapter text, together with additional text within the Work's Chapter 9 that Trump authored or to which he contributed original expression, and his original photographs. Authorship does not depend on attribution. Each Plaintiff asserts ownership of the original expression he authored, whether or not the First Edition credited him for it.

110. Sorensen had access to each contribution because each was supplied for and incorporated into the Work.

111. Sorensen reproduced, distributed, and prepared later-edition material incorporating identified protected expression from those contributions. Plaintiffs will prove copying through targeted passage and image comparisons rather than through generic similarity scores or overlap in unprotectable methods.

112. No Plaintiff transferred ownership of his contribution by a signed writing identified in the record. To the extent Sorensen contends that Plaintiffs granted an implied nonexclusive license, any such license was limited to the objectively manifested purpose for which the contributions were supplied: publication of the Work as a collaborative First Edition identifying its

contributors by name. Plaintiffs did not authorize Sorensen to reproduce, distribute, or prepare materially different later editions that presented Sorensen as the sole author or otherwise omitted or altered Plaintiffs' authorship information. To the extent supported by the evidence, any permission to use Plaintiffs' contributions was further conditioned on the agreed attribution and compensation arrangements. Sorensen's reproduction, distribution, and preparation of the Second Edition and Third Edition exceeded the scope of any implied license. In any event, Sorensen had written notice no later than September 19, 2025 that Plaintiffs disputed any continuing permission for those uses, yet he continued to reproduce and distribute the Second Edition and published the Third Edition.

113. Sorensen continued to reproduce and distribute the later editions after receiving specific notice of Plaintiffs' ownership claims on September 19, 2025, and thereafter sought registrations claiming sole authorship notwithstanding a subsisting registration naming four authors and notwithstanding his own acknowledgment that the registered material included matter "created by other sources." After receiving that letter, Sorensen prepared and published the Third Edition, in which he removed or altered further material identifying Plaintiffs while continuing to publish expression they authored. Plaintiffs do not rely on the rejection of settlement or arbitration as evidence of infringement.

114. Plaintiffs seek actual damages and Sorensen's profits under 17 U.S.C. § 504(b) as to all infringement. Registration No. TX 9-510-125 has an effective date of registration of May 22, 2025. The Second Edition was first published on May 21, 2025, and Plaintiffs do not seek statutory damages or attorney's fees as to infringement commencing with that edition. The Third Edition, a separate derivative work first published on October 27, 2025, was prepared and published after the effective date of registration. Plaintiffs seek statutory damages and attorney's

fees under 17 U.S.C. §§ 504(c) and 505 for the Third Edition only to the extent the evidence establishes that its infringement of identified protected expression first commenced after the effective date of registration and is otherwise eligible under 17 U.S.C. § 412(2).

115. Plaintiffs seek injunctive relief narrowly directed to identified protected expression and to authorship attribution, and not an order restricting the use of unprotectable methods or of material Sorensen lawfully owns.

## COUNT IV

### Removal or Alteration of Copyright Management Information

(17 U.S.C. §§ 1202(b), 1202(c), 1203)

116. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

117. Information identifying a person as the author of a work, conveyed in connection with copies of that work, is copyright management information under 17 U.S.C. § 1202(c).

118. As alleged in Paragraph 71, the First Edition published original photographs created by Plaintiffs beneath copyright notices identifying the photographer as the copyright owner. The Second Edition reproduced several of those photographs without material alteration and without the accompanying copyright notice. The instances presently identified are two photographs published at or about page 17 beneath the notice "© James Wulgaert," reproduced at or about page 25 as Figure 4.2; two photographs published at or about page 20 beneath the notice "© James Wulgaert," reproduced at or about page 28 as Figure 4.6; three photographs published at or about page 22 beneath the notice "© James Wulgaert," reproduced at or about page 30; a

photograph published at or about page 69 beneath the notice "© Chris Trump," reproduced at or about page 83; three photographs published at or about page 71 beneath the notice "© Chris Trump," reproduced at or about page 85 as Figures 7.51 and 7.52; and two photographs published at or about page 132 beneath the notice "© Joe Topczewski," reproduced at or about page 217 as Figure 15.1. In each instance the photographs were reproduced without material alteration and the copyright notices were not reproduced with them. No photographer credit appears with any photograph in the Second Edition. In its back matter, at page 265, the Second Edition separately credits "Principle Photography" to Sorensen alone and lists each Plaintiff among twenty names under "Additional Photos." Sorensen alone remained identified as the author of the Second Edition on its cover and in its indicia.

119. The First Edition displayed, at or about page 1, the signature "Joseph Topczewski, Phd." in connection with safety text authored by Topczewski. The Second Edition retained substantially the same safety text, including the source references appearing with it in the First Edition, while removing that signature.

120. The First Edition displayed pull quotes attributed to Plaintiffs by name at or about pages 17, 62, 135, 161, and 162. The later editions did not retain those pull quotes. Plaintiffs do not base this Count on the removal of a pull quote where the quoted text was itself removed.

121. The First Edition further displayed, in connection with particular text or particular images, the attributions identified in Paragraphs 66 through 71, including the HOP Method attribution to Wulgaert, the additional pull-quote attributions to Wulgaert, the quoted-passage attribution to Topczewski, and the copyright notices appearing with Plaintiffs' photographs. The First Edition displayed a credit line identifying Trump in connection with the introduction to

whitening at or about page 137, and the Second Edition retained that text while removing the credit line. The First Edition also identified Wulgaert and Trump by name at or about pages 4 and 5, and in the later editions that identification was altered to describe a contributor as a member of Sorensen's research team.

122. Sorensen knew the identified attributions existed. He edited and published the First Edition, circulated the December 2021 documents allocating authorship, and participated throughout in communications recognizing Plaintiffs' contributions. He thereafter presented the Second Edition under his name alone, applied to register the same title as sole author on October 2, 2025, thirteen days after receiving Plaintiffs' written demand, and continued to distribute the later editions after that demand.

123. Without the authority of the copyright owner or the law, Sorensen intentionally removed or altered the copyright management information identified above. 17 U.S.C. § 1202(b)(1). To the extent any identified text or photograph is determined to be owned exclusively by the Plaintiff identified with that item, or to the extent Sorensen otherwise lacked authority to remove or alter the copyright management information conveyed with that item, no Plaintiff authorized the removal or alteration of the copyright management information identified in Paragraphs 118 through 121.

124. Without the authority of the copyright owner or the law, Sorensen thereafter distributed copies of the Second Edition knowing that copyright management information had been removed or altered from them. 17 U.S.C. § 1202(b)(3).

125. The removal concealed the source of text retained in a publication presented under Sorensen's name alone, and reduced the likelihood that purchasers, platforms, or others would recognize the relevant Plaintiff's authorship and ownership claim.

126. Sorensen knew, or had reasonable grounds to know, that the removal would induce, enable, facilitate, or conceal infringement of the separately owned contributions alleged in Count III, including continued reproduction and distribution under a disputed claim of sole authorship. The infringement so concealed is the infringement alleged in Count III of expression in which Sorensen holds no ownership interest. Sorensen published the Second Edition as his sole work, and no photographer credit appears with any photograph in it. The effect was that no reader of the Second Edition could identify the photographer of any particular photograph, while Sorensen remained identified as the author of the work as a whole and as its principal photographer. Sorensen had reasonable grounds to know that effect would follow.

127. Plaintiffs do not base this Count on the omission of names from a general contributor list, on the removal of a photograph that was deleted in its entirety and not reproduced in the later editions, or on the Copyright Office's issuance of any later registration. Plaintiffs do base this Count on the removal or alteration of copyright management information conveyed with expression that Sorensen retained and continued to distribute, including photographs reproduced in the Second Edition without material alteration and without the copyright notice identifying the photographer that appeared with them in the First Edition.

128. Statutory damages for a violation of § 1202 are available under 17 U.S.C. § 1203(c)(3)(B), in a sum of not less than $2,500 or more than $25,000 for each violation, and are not subject to 17 U.S.C. § 412, which by its terms applies only to §§ 504 and 505. Plaintiffs

further seek injunctive relief under § 1203(b)(1), costs under § 1203(b)(4), and reasonable attorney's fees under § 1203(b)(5), without duplicative recovery for the same injury.

## COUNT V

### Breach of Implied-in-Fact Compensation Agreement

(Pleaded in the Alternative)

129. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

130. This Count is pleaded in the alternative to Plaintiffs' copyright ownership, accounting, and infringement theories. Plaintiffs seek recovery for Sorensen's alleged personal undertaking to compensate Plaintiffs for requested drafting, editing, testing, research, review, photographs, and other contributor services supplied for a commercial publication. This Count does not seek recovery merely for reproduction, distribution, adaptation, or other use of copyrighted expression, and it is asserted only to the extent it is not preempted by 17 U.S.C. § 301 and is timely under the governing law.

131. Sorensen solicited and accepted Plaintiffs' written material, photographs, testing, editing, research, review, and other contributions for use in a commercial publication. The alleged breach is Sorensen's failure to pay the promised or reasonable compensation for services he requested and accepted, not the mere reproduction, distribution, or other exploitation of the resulting Work. Plaintiffs therefore seek to enforce a personal compensation undertaking that requires proof of request, promise, performance, acceptance, and nonpayment beyond the elements of copyright infringement.

132. The parties' communications and conduct included statements that contributors would receive a royalty bonus or commission, that contributors deserved compensation for helping write the book, and that contributors could obtain copies at cost and resell them as compensation for their work. The March 29, 2022 payment form, recording a payment of $804.84 to each Plaintiff as 12 percent of monthly gross sales, evidences the parties' course of performance. The compensation arrangement did not alter the parties' respective ownership interests in the copyright.

133. Plaintiffs performed by supplying the requested contributions and by participating in development and review. Sorensen published and commercially exploited the resulting Work. Sorensen requested each contribution, each Plaintiff supplied it in reliance on the promise of compensation, and Sorensen accepted and published the contributions. The parties' performance, including the payments described in Paragraph 132, confirms the agreement.

134. The terms ascertainable from Sorensen's own writings and conduct are a payment to each contributor measured as 12 percent of monthly gross sales, payable annually, calculated on gross sales without deduction for expenses. Plaintiffs allege an implied promise on those terms. In the alternative, and only if those terms are not established, Plaintiffs allege an implied promise of reasonable compensation.

135. Sorensen breached that agreement by failing to provide the promised or reasonable compensation. The obligation was payable annually. Each annual payment that came due and was not made is a separate breach with its own accrual date.

136. Plaintiffs seek contract damages for each Plaintiff, measured by the compensation due on sales of the Work and of any later edition to which the arrangement extended, proven through sales, payment, and course-of-performance evidence.

**COUNT VI**

**Unjust Enrichment and Quantum Meruit**

(Pleaded in the Final Alternative)

137. Plaintiffs reallege and incorporate Paragraphs 1 through 86 as though fully set forth herein.

138. This Count is pleaded only as a final alternative, if the Court determines that no enforceable compensation agreement governs. Plaintiffs seek the reasonable value of requested services and benefits Sorensen accepted in connection with the development and revision of a commercial publication, and not a recovery measured by the exclusive rights protected by copyright. This Count is asserted only to the extent it is not preempted by 17 U.S.C. § 301 and is timely under the governing law.

139. Each Plaintiff conferred valuable services and materials at Sorensen's request, including drafting, testing, editing, research, review, chapter revisions, proof-copy review, and 2024 revision contributions, as alleged in Paragraphs 22, 23, 36, and 58 through 61. Sorensen accepted and retained the benefit of those services and materials in connection with the commercial publication and later revision of the Work. Plaintiffs allege that the benefits were not gratuitous, as reflected in Sorensen's compensation discussions and payments. If no enforceable agreement governs, Plaintiffs seek recovery in quantum meruit for the reasonable value of the services

requested and accepted; alternatively, they seek restitution for the nonduplicative benefit retained.

140. Sorensen accepted and retained the benefit of those services and materials, and the parties' compensation discussions support a reasonable expectation that the contributions were not gratuitous. The reasonable value of those services is measured by what a publisher would pay for comparable drafting, editing, and review services, and is subject to offset for the payments described in Paragraph 132.

141. It would be inequitable for Sorensen to retain the value of the requested services without paying for them. If no enforceable agreement governs, Plaintiffs are entitled in quantum meruit to the reasonable value of the services they supplied at Sorensen's request. In the alternative, and only if quantum meruit does not apply, Plaintiffs are entitled in unjust enrichment to the value of the benefit Sorensen retained, less any amount already paid. Neither theory applies to any benefit governed by an enforceable agreement or by the co-owner accounting remedy sought in Count II.

142. Plaintiffs do not use this Count to obtain rights equivalent to copyright in any idea, method, system, or work of authorship, and do not seek restitution measured by the profits from reproduction or distribution of copyrighted expression. Only one non-duplicative restitutionary recovery is available under this Count and Count V, and no recovery under this Count duplicates any award under Counts II or III.

## COUNT VII

### Knowing Material Misrepresentation in a Notification of Claimed Infringement

(17 U.S.C. § 512(f))

(Plaintiff Joseph John Topczewski against Defendant Michael Frederik Sorensen)

143. Plaintiff Joseph John Topczewski realleges and incorporates Paragraphs 1 through 86 as though fully set forth herein. This Count is asserted by Topczewski alone.

144. YouTube is a service provider within the meaning of 17 U.S.C. § 512(k)(1)(B) and maintains a notice-and-takedown process under 17 U.S.C. § 512(c).

145. Topczewski published on his YouTube channel a video titled "three year check in with some original HOP and BLED comics? Are they ruined, revived, or the same?", at https://www.youtube.com/watch?v=xb3p-_4o0Do (the "Video"). The Video is no longer publicly available following the removal process alleged below. The Video consisted of original, previously unpublished footage that Topczewski created, in which he examined two comic books approximately three years after they had been treated, and reported the condition in which they then presented. The majority of the Video showed the exterior condition of the two comic books. Only brief portions showed interior pages of the First Edition.

146. The Video briefly displayed several open pages of the First Edition. The pages displayed, appearing at or about pages 32, 186, 210, and 211, were pages containing photographs that Topczewski himself created and supplied for publication in the Work, depicting the same copies of Superman #226 and Superman's Girl Friend Lois Lane #109 that the Video examined. Each such photograph appeared in the First Edition beneath a copyright notice identifying Topczewski as its copyright owner.

147. On or about January 14, 2025, Sorensen submitted to YouTube, from the electronic mail address kaptainmyke@gmail.com, a notification of claimed copyright infringement under 17

U.S.C. § 512(c)(3)(A) directed at the Video. YouTube's resulting notice to Topczewski identified the allegedly infringed works as "Comic Book CPR and Comic Book Stain Removal and Whitening," identified the allegedly infringing content as the "Entire video," and identified Sorensen as the removal-request issuer. YouTube advised Topczewski that the Video would be removed and a copyright strike applied unless he deleted the Video within seven days. Exhibit D is YouTube's notice to Topczewski; Plaintiffs do not allege that Exhibit D reproduces the complete notification Sorensen submitted to YouTube.

148. Sorensen's certification was a knowing material misrepresentation. The material from the Work that the Video displayed consisted of Topczewski's own photographs, published beneath a copyright notice identifying Topczewski as their owner. Sorensen thereby represented, as the owner of an exclusive right, that Topczewski's display of his own copyrighted photographs was not authorized by the copyright owner, when Topczewski is the copyright owner. This ground does not depend on the determination sought in Count I.

149. The certification was independently a knowing material misrepresentation because Sorensen identified the "Entire video" as infringing. The Video was substantially composed of original footage Topczewski created and had never published, in which no expression owned by Sorensen appears. Sorensen had viewed the Video before reporting it and knew that its content was overwhelmingly not his. A representation that an entire work infringes, made by a claimant who knows that most of it cannot infringe, is a knowing misrepresentation of the scope of the claim and of the material to be removed.

150. In the further alternative, and conditional on the determination sought in Count I, the certification was false because Topczewski is a co-author and co-owner of the copyright in the

Work. A co-owner cannot infringe the jointly owned work, and Topczewski's use was authorized by law.

151. Fair use is a use authorized by law for purposes of the good-faith-belief statement required by 17 U.S.C. § 512(c)(3)(A)(v). See 17 U.S.C. § 107; Lenz v. Universal Music Corp., 815 F.3d 1145, 1153–55 (9th Cir. 2016). The Video displayed only brief portions of the First Edition, including pages containing photographs Topczewski created and supplied for publication, as alleged in Paragraph 146. On information and belief, Sorensen did not conduct a good-faith assessment of whether the Video's particular use was authorized by law before submitting the notification. That allegation is supported by Sorensen's January 18, 2022 statement to the Facebook group that the HOP and BLED methods were "now copyrighted material . . . not covered under 'Fair Use,'" which Plaintiffs allege reflects a categorical view of fair use rather than an assessment of the Video's particular use.

152. Sorensen knew that copyright does not reach the subject matter he sought to protect. On December 15, 2021, Topczewski told him that a method cannot be copyrighted and that copyright reaches only the description of a method. On February 28, 2022, Sorensen himself wrote that "[c]opyright law does not protect ideas, methods, or systems." He nonetheless represented to his Facebook group that the methods were copyrighted, and thereafter used platform copyright processes against videos concerning them, stating on July 12, 2022 that he had "reported him on youtube," and proposing on September 26, 2022 to have YouTube "take down his video."

153. Sorensen knew of Topczewski's authorship and of his ownership of the photographs. He circulated the Work's Chapter 7 on December 18, 2021 under the caption "CATEGORIZING

THE COMPLEXITIES OF STAINS (by Joseph J. Topczewski, Ph.D.)"; granted Topczewski Amazon author credentials on January 1, 2022; published Topczewski's photographs beneath copyright notices identifying Topczewski as their owner; described Topczewski as a co-author on April 28, 2023 and September 30, 2023; and, in Registration No. TX 9-566-200, excluded from his own claim "text, photographs, and artwork created by other sources."

154. Three further circumstances confirm the absence of good faith. First, Sorensen submitted the notification on January 14, 2025, the same day he removed Topczewski from the group in which the collaboration was being conducted and banned him indefinitely. Second, Sorensen had himself republished Topczewski's video content on his own YouTube channel, and removed it only after receiving Plaintiffs' September 19, 2025 letter. Third, Sorensen did not report, and has left publicly available on YouTube, other videos presenting substantially the same content, including videos at https://www.youtube.com/watch?v=O4gHXlUQWHs and https://www.youtube.com/watch?v=reILsgql_Is. Sorensen's objection was to the speaker, not to the material.

155. The misrepresentation was material. YouTube's process requires a claimant to identify the copyrighted work, to identify the material to be removed, and to certify a good faith belief that the use is not authorized by the copyright owner, its agent, or the law. Those are the representations on which the service provider acts, and YouTube acted on them here.

156. In reliance on the notification, YouTube determined that the Video would be removed, and notified Topczewski at Topcomicspressing@gmail.com, from no-reply@youtube.com, that he could either delete the Video himself within seven days or do nothing and allow the removal to take effect with a copyright strike applied to his channel. Topczewski deleted the Video to

avoid the strike. The Video was removed from YouTube as the direct result of YouTube's reliance on Sorensen's notification. The removal is not attributable to any other cause and did not result from unrelated platform enforcement or from any separate copyright complaint. The notification is attached as Exhibit D.

157. Topczewski is an alleged infringer injured by Sorensen's knowing material misrepresentation within the meaning of 17 U.S.C. § 512(f). As a direct and proximate result, he incurred damages, including lost monetization and channel revenue and the loss of original footage published to his audience. Topczewski further seeks damages for lost views, subscribers, and channel standing, and for lost restoration and pressing business traceable to the removal, to the extent proven. In the alternative, Topczewski seeks nominal damages.

158. Sorensen is liable to Topczewski under 17 U.S.C. § 512(f) for those damages, together with costs and attorney's fees. This Count is timely. 17 U.S.C. § 507(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendant Michael Frederik Sorensen and grant the following relief:

A. A declaration identifying the authors and owners of the Work and the nature and extent of each party's interest in it, including a declaration that each of the four authors holds an equal undivided interest in the copyright in the Work absent proof of an agreement establishing different interests;

B. In the alternative, a declaration identifying each Plaintiff's ownership of his separately authored and unassigned text and photographs;

C. A complete and verified accounting of gross revenues, deductions claimed by Defendant, the source records supporting each claimed deduction, deductions permitted by law, and resulting net profits associated with the exploitation of the Work and, to the extent attributable to jointly owned material, of every later edition, from first publication through the date of judgment, supported by platform reports, royalty statements, payment records, invoices, and bank records;

D. Payment to Plaintiffs of the share of profits proven due, less amounts already received, and without duplicative recovery;

E. To the extent permitted by the governing law, and upon proof that Defendant holds identifiable proceeds belonging in part to Plaintiffs, imposition of a constructive trust over Plaintiffs' share;

F. On Count III, actual damages and any additional profits of Defendant attributable to the infringement under 17 U.S.C. § 504(b) or, at Plaintiffs' election and only to the extent available under 17 U.S.C. §§ 412(2) and 504(c), statutory damages for infringement of identified protected expression in the Third Edition that first commenced after the effective date of Registration No. TX 9-510-125;

G. On Count IV, for each proven violation of 17 U.S.C. § 1202(b), statutory damages under 17 U.S.C. § 1203(c)(3)(B) in a sum of not less than $2,500 or more than $25,000 per violation or, at Plaintiffs' election, actual damages and Defendant's profits under 17 U.S.C. § 1203(c)(2), together with injunctive relief under 17 U.S.C. § 1203(b)(1);

H. On Count V, damages measured by the compensation terms proven at trial;

I. In the alternative to paragraph H, and only if no enforceable agreement governs, on Count VI the reasonable value of the services rendered or restitution of the benefit retained, less amounts already paid;

J. On Count VII, and in favor of Plaintiff Joseph John Topczewski alone, damages in an amount to be established at trial or, in the alternative, nominal damages, together with costs and attorney's fees under 17 U.S.C. § 512(f);

K. Injunctive relief, narrowly tailored: (i) under 17 U.S.C. § 502, to prevent or restrain proven infringement of specifically identified protected expression; (ii) under 17 U.S.C. § 1203(b)(1) and, following a finding of a violation, § 1203(b)(6), to prevent or restrain proven violations of 17 U.S.C. § 1202(b) and require remedial modification or correction of copyright management information found to have been removed or altered in violation of that section; and (iii) to the extent supported by a proven enforceable agreement, to enforce any contractual attribution obligation. Any such relief shall not restrict the use of unprotectable ideas, methods, systems, procedures, or facts, or of material Defendant lawfully owns;

L. If the accuracy of a registration is placed in issue, a request by the Court to the Register of Copyrights under 17 U.S.C. § 411(b)(2) for advice whether the inaccurate information, if known, would have caused the Register to refuse registration;

M. Costs where authorized by 17 U.S.C. §§ 505 and 1203(b)(4), attorney's fees where authorized by 17 U.S.C. §§ 505 and 1203(b)(5), pre-judgment interest where authorized, and post-judgment interest as provided by 28 U.S.C. § 1961; and

N. Plaintiffs do not seek duplicative recovery. No award under Counts II through VII shall duplicate any other award for the same injury, receipts, services, profits, or damages; and

O. Such other and further relief as the Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38. See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998).

Dated: September 18, 2026

Respectfully submitted,

/s/ Francis Darcy Konczakowski

Francis Darcy Konczakowski

Pennsylvania Attorney ID No. 306845

FDK Law PLLC

1700 Market Street, Suite 1005

Philadelphia, PA 19103

Telephone: 215-563-5760

Email: frank@fdklaw.com

Attorney for Plaintiffs